Orville BARNEY; Ray Whetstone;
Steve Dursteler, Plaintiffs—
Appellants,

v.

MASONITE CORPORATION; International Paper Company; Vice President, Investments of International Paper, International Paper Company; Senior Vice President, Human Resources International Paper, International Paper Company; Fiduciaries of the Retirement Plan of International Paper Company; Philip P. Kohner; Jane Hewitt; Robert Luepo, Defendants—Appellees.

of this circuit except as provided by Ninth Circuit Rule 36–3.

No. 02–15127.
D.C. No. CV–00–01534–PJH.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 14, 2003.

Decided Aug. 28, 2003.

Kevin P. Urbatsch, Peter S. Myers, The Myers Law Firm, San Francisco, CA, for Plaintiff-Appellant.

Edwin L. Currey, Jr., Law Offices, San Francisco, CA, John D. Barr, James A. Sonne, McGuire, Woods, Battle & Boothe, Stephanie P. Karn, McGuire Woods LLP, Richmond, VA, for Defendant-Appellee.

Before WALLACE, O'SCANNLAIN, Circuit Judges, and BEISTLINE,* District Judge.

## MEMORANDUM**

Orville Barney, Ray Whetstone, and Steve Dursteler ("Plan members") appeal from the district court's summary judgment denying them retirement benefits covered under the Employment Retirement Income Security Act, 29 U.S.C. § 1001 et. seq. ("ERISA"). The facts are known to the parties, and will not be repeated herein except as necessary. We have jurisdiction, and we affirm.

---

* The Honorable Ralph R. Beistline, United States District Court Judge for the District of Alaska, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

## I

The Plan members' primary argument on appeal is that the plan administrator is wrongfully withholding benefits due to them under their employer's ERISA-covered retirement plan ("Masonite Plan"). ERISA provides that plan participants may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

The dispute concerns the proper application of the offset provision in the Masonite Plan, which provides as follows:

> The monthly equivalent of any retirement benefit . . . shall be reduced by the . . . Actuarial Equivalent of all benefits based on such Participant's Accrual Service and payable with respect to such Participant under any other defined plan . . . to which a controlled group member contributes. The Company shall apply this [section] in a uniform manner to Participants similarly situated for the purpose of avoiding duplication of benefits.

Masonite Plan § 5.02.

In plain English, what this provision means is that there is no "double dipping." That is, if a Masonite Plan member receives benefits from another plan to which Masonite contributed, then benefits due to the plan member under the Masonite Plan are reduced accordingly. Here, the Plan administrator interpreted this provision to apply to the Plan members in this case, who were all formerly participants in a union plan ("Teamsters Plan") to which Masonite contributed. Accordingly, the plan administrator read the terms of the plan to require a reduction in the benefits the Plan members would receive from the Masonite Plan.[1]

The Plan members argued below, and argue on appeal, that the offset provision does not apply to them because the years they spent working for Masonite while members of the Teamsters Plan do not come within the meaning of "Accrual Service" in the offset provision. Accrual service is defined in the Masonite Plan as "the sum of Past Service and Future Service for Benefits as described in 3.01 and 3.03 respectively." Masonite Plan § 1.02. The appellants argue that §§ 3.01 and 3.03 only apply to "participants in the prior plan," that is, participants in the Masonite Plan in place prior to 1988, when it was amended and restated. Since they were *not* members in the prior plan, the term "accrual service" does not apply to them, and therefore, by extension, nor does the offset provision.

We agree with the district court, however, that the Plan members misconstrue the import of sections 3.01 and 3.03. Those sections serve two functions: (1) they describe how past and future service is calculated, *and* (2) they describe how to determine which participants are entitled to credit for those types of services. Sec-

---

1. The parties dispute the proper standard of review with respect to the administrator's interpretation of the Masonite Plan. Under the terms of a 1992 International Paper Corporation ("International Paper") plan, the plan administrator has the "discretionary authority . . . to interpret the Plan, and to resolve ambiguities, inconsistences and omissions." Masonite argues that this provision applies to the Masonite Plan that is at issue in this case, and therefore we review the administrator's interpretation for an abuse of discretion. *See Schikore v. BankAmerica Supplemental Retirement Plan,* 269 F.3d 956, 960 (9th Cir.2001). The appellants, understandably, disagree, and argue that the proper standard of review is de novo. It is unnecessary for us to resolve this dispute, however, since the result is the same regardless of the governing standard of review.

tion 1.02's reference to §§ 3.01 and 3.03 is with respect to the former function. Section 3.05 quite clearly applies to the Plan members, which provides:

> If an employee of an Employer is transferred so that he becomes an Employee as defined in Section 1.19, he shall be given Past Service, Future Service for Vesting and Future Service for Benefits as well as credit for Earnings for all of his prior employment with the Employer on the same basis as would have applied if he had been a Participant.

There are three exceptions to this section, each of which describes the circumstances in which a transferee will not be given credit for "Accrual Service." *Id.* None apply here. Thus, this section describes the Plan members' situation perfectly: they are transferees within the meaning of the provision, and there is no way to give substantive content to the term "Accrual Service" in this section *without* reference to §§ 1.02, 3.01, and 3.03 respectively. Section 3.05 therefore makes it quite clear that the offset provision squarely applies to transferees into the Masonite Plan.

The Plan members also argue that the offset provision's use of the word "contributes" instead of "contributed" means that there should only be an offset where Masonite's contributions to two separate plans are *simultaneous.* This makes little sense. Read fairly, the plain meaning of the provision is that a participant may not receive two full pensions from plans to which Masonite has contributed for pre-

cisely the same service. Since the Plan members are receiving all of the benefits they are entitled to receive under the Masonite Plan, their claim for relief fails.[2]

## II

■ The Plan members contend in the alternative that they are entitled to relief under principles of equitable estoppel. A claimant may recover benefits under an equitable estoppel theory upon establishing a material misrepresentation, reasonable and detrimental reliance upon the representation and extraordinary circumstances. *Spink v. Lockheed Corp.,* 125 F.3d 1257, 1262 (9th Cir.1997); *Pisciotta v. Teledyne Indus. Inc.,* 91 F.3d 1326, 1331 (9th Cir.1996). In the ERISA context, a claimant must allege two more elements: First, that the provisions of the plan at issue are ambiguous such that reasonable people might disagree as to their meaning and effect, and second, oral representations with respect to the terms of the plan must have been made to the employee. *Pisciotta,* 91 F.3d at 1331. "It is the law of this circuit ... that an employee benefit fund may not be required by estoppel to make payments not authorized by a written plan." *Hansen v. Western Greyhound Retirement Plan,* 859 F.2d 779, 781 (9th Cir.1988); *see also Watkins v. Westinghouse Hanford Co.,* 12 F.3d 1517, 1520 (9th Cir.1993) ("an estoppel claim cannot result in the payment of benefits that would be inconsistent with the written plan").

---

2. We also reject the Plan members' attempt to construe the plan administrator's interpretation of the offset provision as an "amendment" to the Masonite Plan which violated ERISA's anti-cutback rule. *See* 29 U.S.C. § 1054(g) ("The accrued benefit of a participant under a plan may not be decreased by an amendment of a plan...."). The anti-cutback rule requires courts to "determine exact-

ly what [an employee's] retirement benefit was under the [prior] plan." *Michael v. Riverside Cement Co. Pension Plan,* 266 F.3d 1023, 1027 (9th Cir.2001). Since the Masonite Plan's offset provision applies squarely to the Plan members, it follows that they do not have any "accrued benefit" that is subject to a decrease via amendment.

The Masonite Plan is not ambiguous; for reasons previously explained, the relief the Plan members ask for is clearly foreclosed by the offset provision. The fact the plan is complicated does not, as the Plan members would have it, render it ambiguous. Given that the offset provision applies to the Plan members, their equitable estoppel claim fails. *See Marx v. Loral Corp.*, 87 F.3d 1049, 1056 (9th Cir. 1996) ("Because the Plan is unambiguous, [Ninth Circuit caselaw] forecloses any equitable relief.").

### III

 Third, the district court did not abuse its discretion in refusing to award the Plan members more than $15,348.75 in attorney fees in connection with the settlement of the claim for breach of a duty to furnish Plan documents. *See Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 452 (9th Cir.1980). The district court engaged in an extensive and careful examination of the appropriate factors, and ultimately determined that a limited award was proper for the settled claim only. The rule is that "ERISA employee plaintiffs should be entitled to a reasonable attorney's fee if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Smith v. CMTA–IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir.1984). The only claim the Plan members may be said to have "prevailed" on is with respect to Masonite's failure to provide plan documents, which was settled by the parties. Limiting the award to fees expended in pursuit of this claim only seems entirely reasonable, and certainly not an abuse of the district court's discretion.

### IV

Finally, there is no error in the district court's decision to deny a request to amend the complaint in order to add two new parties. Given that the appellants case fails on the merits, amending the complaint in order to add parties would have been a futile exercise. *See Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir.1990).

AFFIRMED.